UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Jane Doe, | ) | C/A No. 0:25-cv-13931-CMC-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Group 1 Automotive, Inc., | ) | |
| d/b/a Toyota of Rock Hill, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Plaintiff's Motion to proceed under a pseudonym. ECF

No. 8. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B), D.S.C.,

the undersigned United States Magistrate Judge is authorized to review all pretrial matters in this

case.[1] For the reasons below, Plaintiff's Motion (ECF No. 8) is **DENIED**.

## BACKGROUND

**Procedural History**

Plaintiff, using the pseudonym "Jane Doe," commenced this action on November 17, 2025,

by filing a Complaint against her former employer, Group 1 Automotive, Inc., doing business as

---

[1] Because a motion to proceed pseudonymously under Rule 10(a) is a non-dispositive pretrial motion, the undersigned United States Magistrate Judge has the authority to decide the Motion by this order rather than a report and recommendation to the District Court. *See, e.g.*, *Doe v. Cristini*, C/A No. 2:24-cv-00336-CCW-CBB, 2025 WL 640663, at *6 (W.D. Pa. Feb. 27, 2025) ("A motion to proceed under pseudonym is a non-dispositive motion and appropriately decided by a federal magistrate judge."); *Trooper 1 v. New York State Police*, C/A No. 22-cv-893-LDH, 2022 WL 22869548, at *1 (E.D.N.Y. June 9, 2022) ("A motion to proceed under a pseudonym is a non-dispositive pre-trial motion within a magistrate judge's jurisdiction."); *Doe v. Townes*, C/A No. 19-cv-8034-ALC-OTW, 2020 WL 2395159, at *2 (S.D.N.Y. May 12, 2020).

Toyota of Rock Hill ("Defendant")[2] in the York County Court of Common Pleas at case number 2025-cp-46-04525. ECF No. 1-1. Plaintiff's Complaint alleges certain state law claims as well as claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964. *Id*. On December 18, 2025, Defendant filed a Notice of Removal in this Court and also filed an Answer to the Complaint. ECF Nos. 1; 4. The Court entered a Scheduling Order on January 5, 2026, outlining various deadlines. ECF No. 9.

On January 2, 2026, Plaintiff filed a Motion to proceed under a pseudonym pursuant to Rule 10(a) of the Federal Rules of Civil Procedure. ECF No. 8. Defendant filed a Response in Opposition on January 16, 2026. ECF No. 10. Plaintiff filed a Reply on January 23, 2026. ECF No. 11. The Motion is fully briefed and ripe for review.

**Factual Background**

The Court provides a summary of the pertinent allegations and claims asserted in the Complaint relevant to the matters addressed herein. ECF No. 1-1. During the times relevant to the events at issue in this case, Plaintiff was employed by Defendant at its dealership facility located in Rock Hill, South Carolina (the "Rock Hill Dealership"). *Id*. at 3, ¶¶ 1–3. Plaintiff is a female; she began her employment with Defendant around November 16, 2021; and she worked as a Sales Representative at the Rock Hill Dealership. *Id*. at 4, ¶¶ 6–8. During her employment at the Rock Hill Dealership, Plaintiff was sexually harassed by her supervisor Kendy Guerrier ("Guerrier"), a male Sales Manager. *Id*. at 4, ¶ 9. Plaintiff and Guerrier had previously worked together at a different dealership where Guerrier also sexually harassed Plaintiff, but "it was mild . . . unlike the egregious sexual harassment and sexual assaults" at the Rock Hill Dealership. *Id*.

---

[2] Defendant notes that it is properly identified as "GPI SC-T, LLC d/b/a Toyota of Rock Hill." ECF No. 4 at 1.

at 4, ¶ 10. While working at the prior dealership, Plaintiff was in a relationship with the father of her child. *Id*.

The "egregious sexual harassment and sexual assaults by Guerrier" started soon after Plaintiff was hired at the Rock Hill Dealership in November 2021. *Id*. at 4, ¶ 11. The harassment escalated significantly in December 2021 and continued throughout Plaintiff's employment at the Rock Hill Dealership. *Id*. The sexual harassment involved "unwanted physical assaults on Plaintiff's physical person, offensive statements to Plaintiff, sexual propositions to Plaintiff, threats when Plaintiff did not capitulate to Guerrier's unwanted advances, and harms to Plaintiff's income and employment when Plaintiff opposed the sexual harassment." *Id*. Guerrier harassed Plaintiff by "saying things like he had always had feelings for Plaintiff, and he kept trying to be with Plaintiff." *Id*. at 5, ¶ 12.

On December 29, 2021, after the sexual harassment started escalating, Plaintiff sent Guerrier a text message that said:

> I get it you're trying to make it like you're confused and like I'm just 'quitting' but I'm considering quitting because I feel emotionally forced to. You're causing me too much stress while trying to work.

*Id*. at 5, ¶ 13. Although Plaintiff and Guerrier never had sex with one another, Guerrier ceaselessly tried to have sex with Plaintiff. *Id*. at 5, ¶ 14. Guerrier sent Plaintiff several pictures of himself including when he was naked. *Id*. On January 8, 2022, Guerrier sent Plaintiff a text message of a picture of himself naked. *Id*. On February 12, 2022, Guerrier sent Plaintiff a text message that said, "I watched you get dressed and I followed suite." *Id*. at 5, ¶ 15. "Plaintiff was scared for her safety, and she opposed Guerrier's stalker like statement and the conduct he was doing . . ." *Id*.

On several occasions, Guerrier pulled Plaintiff's hand and tried to physically force it to make contact with his private parts, but Plaintiff tried to pull her hand away and told Guerrier no

3

and that she needed to get back to work. *Id*. at 5, ¶ 16. In June 2023, Guerrier demanded that Plaintiff get into a car at the dealership alone with him, which made Plaintiff feel uncomfortable and she did not want to do so. *Id*. at 5, ¶ 17. Plaintiff got into the car under duress. *Id*. While in the vehicle, Guerrier "kept feeling up Plaintiff's legs" which was an "unwanted assault on her physical person." *Id*. at 6, ¶ 17. Guerrier put his right hand up the middle of Plaintiff's thighs toward her crotch, but Plaintiff pushed his hand away and kept telling him to stop. *Id*. Plaintiff had pants on so Guerrier could not make contract directly with her skin, but he pressed his right hand against Plaintiff's crotch. *Id*. "That was one of many times up until her termination that Guerrier touched Plaintiff in an unwanted sexual manner." *Id*.

Around that time, Plaintiff informed Guerrier that she was going to report him to Human Resources ("HR"). *Id*. at 6, ¶ 18. Guerrier responded that, if Plaintiff went to HR, she would get fired and stated "You'll lose your job before I lose mine. It'll be your word against mine." *Id*. Plaintiff was scared by the threat. *Id*. On other occasions, Guerrier would sit down in Plaintiff's personal space and press his leg against her leg. *Id*. at 6, ¶ 19. When Plaintiff would try to move away, Guerrier would close the distance and press his leg against Plaintiff again. *Id*. On several occasions, Guerrier would fondle Plaintiff's legs, trying to feel Plaintiff's legs, butt, and crotch. *Id*. at 6, ¶ 20. Guerrier tried to kiss Plaintiff on many occasions, but Plaintiff would pull her head back and tell him to stop. *Id*. at 6, ¶ 21. "Guerrier would do sexually provocative things towards Plaintiff like liking his lips and simulating cunnilingus." *Id*. at 7, ¶ 22. On another occasion, Guerrier approached Plaintiff from behind and thrust himself hard against Plaintiff's butt with his private parts, pinning Plaintiff against the sales board in the office. *Id*. at 7, ¶ 23.

Plaintiff reported Guerrier's sexual harassment to HR, having a conversation with Diane Key ("Key"), a female HR representative. *Id*. at 7, ¶ 25. Around August 2022, Plaintiff met with

Key offsite for a confidential interview, during which Plaintiff described in detail the sexual harassment. *Id*. at 7, ¶ 26. About a month later, "Plaintiff was told Key was gone" and there was no longer an HR contact at the Rock Hill Dealership. *Id*. Many of the events occurred when no one else was around to see it, but on a few occasions other employees witnessed Guerrier's harassment of Plaintiff. *Id*. at 7–8, ¶¶ 27–28. Plaintiff did everything she could to stop the sexual harassment. *Id*. at 8, ¶ 29. All of the managers at the Rock Hill Dealership were aware of the sexual harassment. *Id*. at 8, ¶ 30. After Key left and there was no longer an HR representative, Plaintiff "opposed being sexually harassed to the General Manager Cutis Smith ('Smith')." *Id*. at 8, ¶ 31. Plaintiff heard Smith tell Guerrier to knock it off, but he took no adverse action and did not discipline Guerrier for his conduct toward Plaintiff. *Id*. at 9, ¶ 32. Plaintiff makes other allegations concerning these and other events. *Id*. at 9–10, ¶¶ 33–38.

When Plaintiff opposed Guerrier's sexual harassment and assaults, he would retaliate. *Id*. at 10, ¶ 39. On September 29, 2023, Guerrier sent Plaintiff a text message saying, "I love you," and Plaintiff responded by sending a frown face emoji. *Id*. at 10, ¶ 40. Plaintiff went to the doctor due to the emotional distress she was experiencing and was placed on blood pressure and anxiety medication. *Id*. at 10, ¶ 41. In October 2023, Plaintiff informed Guerrier that she was looking for another job because of his continued sexual harassment and assaults. *Id*. at 11, ¶ 42. Guerrier told Marshall Sullivan ("Sullivan"), the new General Sales Manager, who pulled Plaintiff into a meeting to discuss it. *Id*. at 11, ¶ 43. Plaintiff informed Sullivan that she was having issues with how Guerrier was treating her, but Sullivan was already aware of the issues. *Id*. Sullivan asked Plaintiff if she was planning to quit because "Guerrier came at her sexually." *Id*. Sullivan told Plaintiff that she should stay and recommit to staying with the dealership to work things out. *Id*. Plaintiff told Sullivan she would stay. *Id*. Despite having "begged Plaintiff to stay in October,"

Sullivant "turned around and terminated Plaintiff's employment on December 4, 2023." *Id*. at 11, ¶ 44. Plaintiff was not given a reason for her termination, and she believes there was no reason "other than the unlawful sex discrimination and retaliation in violation of Title VII." *Id*. Plaintiff applied for employment with other prospective employers following her separation from Defendant, but Defendant, through its agents such as Guerrier, "made false and defamatory statements to these prospective employers." *Id*. at 11, ¶ 46. As a result of the defamatory statements, Plaintiff has suffered reputational harm and loss of potential employment opportunities. *Id*. at 12, ¶ 50.

Based on these allegations, Plaintiff asserts the following claims: (1) sex discrimination in violation of Title VII, *id*. at 12–14, ¶¶ 51–66; (2) retaliation in violation of Title VII, *id*. at 14–16, ¶¶ 67–76; (3) defamation, *id*. at 16–17, ¶¶ 77–85; and (4) intentional infliction of emotional distress, *id*. at 17–19, ¶¶ 86–93.

## **APPLICABLE LAW**

Rule 10(a) of the Federal Rules of Civil Procedure requires that a civil complaint "must name all the parties." Fed. R. Civ. P. 10(a). "That requirement is more than mere formality," *Doe v. Liberty Univ., Inc.*, C/A No. 6:21-cv-00059, 2022 WL 4781727, at *3–4 (W.D. Va. Sept. 30, 2022), as it "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly," *B.R. v. F.C.S.B.*, 17 F.4th 485, 496 (4th Cir. 2021). This "general presumption" ensures open judicial proceedings, *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993), and protects the public's "interest in knowing the names of litigants," *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014). To protect these interests, "few cases warrant anonymity" and "few litigants request it." *Doe v. Sidar*, 93 F.4th 241, 247 (4th Cir. 2024).

Moreover, the Court must be cognizant of the "general presumption of openness of judicial proceedings," though that "operates only as a presumption" and "under appropriate circumstances anonymity may, as a matter of discretion, be permitted." *James*, 6 F.3d at 238 (noting, however, that allowing a litigant to proceed anonymously is a "rare dispensation"). Because litigation under a pseudonym "undermines the public's right of access to judicial proceedings," the Fourth Circuit has held that, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Public Citizen*, 749 F.3d at 273–74.

Thus, a district court may allow pseudonymous litigation only in "exceptional" circumstances. *Id.* at 273; *see also James*, 6 F.3d at 238. In *James*, the Fourth Circuit identified five non-exhaustive factors to consider when a party requests to proceed pseudonymously:

(1)     whether the requesting party requests pseudonymity to avoid the annoyance and criticism that often accompanies litigation *or* to preserve privacy in a matter of sensitive and highly personal nature;

(2)     whether identification poses a risk of retaliatory physical or mental harm to the requesting party or to innocent third parties;

(3)     the ages of the protected parties;

(4)     whether the action is against a governmental or private party; and

(5)     whether proceeding pseudonymously is unfair to the opposing party.

6 F.3d at 238 (the "*James* factors"); *see also Doe v. Doe*, 85 F.4th 206, 211 (4th Cir. 2023) (reaffirming and applying the *James* factors); *Sidar*, 93 F.4th at 247 (same). Some of these factors may not be relevant in a particular case, while others may be. *Doe v. Va. Polytechnic Inst. & State*

*Univ.*, No. 7:19-cv-249, 2020 WL 1287960, at *3 (W.D. Va. Mar. 18, 2020); *Doe v. Alger*, 317

F.R.D. 37, 39 (W.D. Va. 2016) ("Not all of these factors may be relevant to a given case, and there

may be others that are."). No single factor is dispositive. *See Doe*, 85 F.4th at 212 (requiring

district courts to "consider each case individually" and "discern which factors should—in their

discretion—weigh most heavily"). Instead, the court must find that the requesting party's stated

interest in anonymity outweighs the public's interest in openness and any prejudice anonymity

would pose to the opposing party. *Pub. Citizen*, 749 F.3d at 274.

## THE PARTIES' POSITIONS

As to Plaintiff's use of the "Jane Doe" pseudonym, the Complaint provides the following

explanation:

> The legal name of the Plaintiff is known to Defendant and has been
> disclosed prior to the filing of this lawsuit. Because of the sensitive
> nature of the issues involved in this case, the Plaintiff's name is
> protected. To the extent necessary to invoke statutory protection of
> Plaintiff's name from public disclosure, Plaintiff asserts protection
> under S.C. Code § 44-29-136. That statute allows individuals to use
> pseudonyms in proceedings relating to disclosure of sexually
> transmitted disease records. Such records are at issue in this case.

ECF No. 1-1 at 3, n.1.[3]

---

[3] Rule 10(a) of the Federal Rules of Civil Procedure requires a litigant to first obtain permission from the Court prior to proceeding under a pseudonym. Rule 10(a) did not apply, however, when Plaintiff commenced this action, which was brough in the state court using a pseudonym. Plaintiff's Complaint asserts that Plaintiff was proceeding under a pseudonym pursuant to a state law that "allows individuals to use pseudonyms in proceedings relating to disclosure of sexually transmitted disease records." ECF No. 1-1 at 3, n.1. The Complaint, however, contains no allegations concerning any sexually transmitted disease or accompanying records. "While the Fourth Circuit Court of Appeals has not ruled on this issue, some courts have held that, absent permission to proceed anonymously, if a complaint fails to comply with Rule 10(a) and does not divulge the plaintiff's identity, its filing is ineffective to commence an action and the court lacks jurisdiction over the unnamed parties." *Richard S. v. Sebelius*, No. 3:12-cv-007-TMC, 2012 WL 1909344, at *1 (D.S.C. May 25, 2012) (denying "Plaintiffs' belated request to proceed anonymously") (citations omitted). "The court does not condone the filing of an action anonymously without permission . . . [and, w]ithout identification of Plaintiffs or permission from

Plaintiff has filed a Motion under Rule 10(a) seeking leave of the Court to proceed under a pseudonym. ECF No. 8. In support of her Motion, Plaintiff argues that she should be permitted to proceed under a pseudonym "due to the exceptionally sensitive nature of this case, which involves repeated sexual harassment, sexual assault, retaliation, and an ongoing campaign of post-termination defamation by her former supervisor and employer." ECF No. 8-1 at 1. Plaintiff contends that public disclosure of her identity would expose her to further retaliation, reputational harm, professional blacklisting within a narrow industry, and renewed emotional and psychological trauma. *Id*.

As to the *James* factors, Plaintiff argues as follows. The first factor, according to Plaintiff, weighs heavily in her favor because this "case involves repeated sexual harassment, sexual assaults, coercive sexual conduct by a supervisor, threats tied to Plaintiff's livelihood, and resulting psychological harm." *Id*. at 3. As to the second factor, Plaintiff argues that disclosure of her identity will create a concrete risk of retaliation and ongoing harm given the allegations in the Complaint concerning the ongoing retaliation and defamation by Plaintiff's former supervisor and employer. *Id*. at 4. Regarding the third factor, Plaintiff asserts she "is a single mother whose ability to support her child depends on continued employment in her field." *Id*. Plaintiff argues that exposing her identity would subject her child to the collateral consequences of reputational harm, financial instability, and psychological distress. *Id*. at 5. The fourth factor, according to Plaintiff, is not dispositive as Defendant's status as a private employer, rather than a governmental party, does not outweigh Plaintiff's interests in privacy and safety, "particularly where Defendant

---

the court to proceed anonymously or under a pseudonym, the court may lack jurisdiction and, furthermore, the burden should not fall on Defendants to request identification of Plaintiffs." *Id*. Although Plaintiff did not seek permission in the state court to proceed pseudonymously, she has now moved to proceed pseudonymously under Rule 10(a) in this Court, and the parties have fully briefed the issue.

already knows Plaintiff's identity and where anonymity is sought only with respect to public filings." *Id*. Finally, Plaintiff asserts that the fifth factor strongly favors Plaintiff because Defendant already knows Plaintiff's identity, supervised her directly, and possesses relevant employment records and witnesses. *Id*. Thus, Plaintiff argues, Defendant would not be unfairly prejudiced by her anonymity. *Id*.

Defendant opposes Plaintiff's Motion, arguing that Plaintiff has failed to satisfy the *James* factors. ECF No. 10 at 1. Citing *Doe v. Weston & Sampson Eng'rs, Inc.*, 743 F. Supp. 3d 751, 756 (D.S.C. 2024), Defendant argues that the "court's analysis and determination" in that case "is instructive in this case." *Id*. at 4–5. Drawing numerous comparisons between the two cases, Defendant argues that Plaintiff has not demonstrated she is entitled to proceed under a pseudonym and urges the Court to deny the Motion. *Id*. at 3–6.

Plaintiff's Reply notes, among other things, that Defendant's reliance on *Weston & Sampson* is misplaced because the present case is factually and procedurally distinct. ECF No. 11 at 3. Plaintiff again argues she satisfies the *James* factors and requests that the Court permit her to proceed under the pseudonym of "Jane Doe." *Id*. at 2–5.

## ANALYSIS

The Federal Rules of Civil Procedure demand that a Complaint provide "the names of all the parties." Fed. R. Civ. P. 10(a). The public nature of lawsuits and the public interest inherent in the rights vindicated in courtrooms makes open and transparent proceedings—including the identity of all parties—imperative to equitable outcomes. *See M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (holding that "Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be

incurred as a result of the disclosure of the plaintiff's identity.  The risk that a plaintiff may suffer

some embarrassment is not enough.") (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)).

"However, in certain *exceptional* circumstances, the district court may allow a party to proceed

pseudonymously."  *Smith v. Towson Univ.*, C/A No. JRR-22-cv-2998, 2022 WL 18142844, at *1

(D. Md. Nov. 30, 2022) (emphasis added), *aff'd*, No. 22-2319, 2023 WL 3053034 (4th Cir. Apr.

24, 2023).    Before granting a request to proceed pseudonymously, the "district court has an

independent obligation to ensure that extraordinary circumstances support such a request by

balancing the party's stated interest in anonymity against the public's interest in openness and any

prejudice that anonymity would pose to the opposing party."  *Pub. Citizen*, 749 F.3d at 74; *James*,

6 F.3d at 242 ("Federal courts traditionally have recognized that in some cases the general

presumption of open trials-including identification of parties and witnesses by their real names-

should yield in deference to sufficiently pressing needs for party or witness anonymity.").  Courts

within the Fourth Circuit have emphasized that permitting a party to proceed anonymously occurs

only in "the exceptional case."  *K-Beech, Inc. v. Does 1-29*, 826 F. Supp. 2d 903, 905 (W.D.N.C.

2011).

## *Weston & Sampson*

Before applying the *James* factors, the Court notes that both parties address the

applicability of *Weston & Sampson* to the present case.  Defendant relies heavily on *Weston &*

*Sampson* in urging the Court to deny Plaintiff's Motion.  *See generally*, ECF No. 10.  However, as

Plaintiff points out, the "central feature of *Weston* is absent here" in that there is no indication that

Plaintiff has unmasked herself in a public forum in a manner that negates her privacy interest.  ECF

No. 11 at 4.  The dispositive issue in *Weston & Sampson* was that the Plaintiff had unmasked

herself by using her own name in a post to a Facebook group consisting of over 40,000 people

11

discussing her allegations of sexual assault that formed the basis of her claims in the lawsuit. *See Weston & Sampson*, 743 F. Supp. 3d 751, 761 (D.S.C. 2024). There is no indication in the present case that Plaintiff has identified herself to anyone. As such, *Weston & Sampson* is distinguishable as to the key issue in that case which informed the Court in its determination of whether to permit the plaintiff to proceed pseudonymously.

**The *James* Factors**

In deciding whether to permit a party to remain anonymous, "[t]he Court begins with the overarching presumption that allowing a party to proceed under a pseudonym is a 'rare disposition.'" *Roe v. CVS Caremark Corp.*, C/A No. 4:13-cv-3481-RBH, 2014 WL 12608588, at *2 (D.S.C. Sept. 11, 2014) (quoting *James*, 6 F.3d at 238). "Then the Court must consider any factors which suggest whether or not proceeding under a pseudonym is appropriate, such as those set forth in *James*." *Id*. The Court will apply each of the *James* factors in turn below to the specific facts and circumstances of this case.

### *Need to Preserve Privacy*

The first factor requires the Court to consider whether Plaintiff's request for pseudonymity is made to avoid the annoyance and criticism that often accompanies litigation, or on the other hand to preserve privacy in a matter of sensitive and highly personal nature. Plaintiff is "not permitted to proceed anonymously merely because of the risk of embarrassment or ridicule." *Pathways Psychological Support Ctr. v. Town of Leonardtown*, C/A No. DKC 99-cv-1362, 1999 WL 1068488, at *4 (D. Md. July 30, 1999). This factor weighs slightly in Plaintiff's favor, but it is insufficient alone to warrant Plaintiff's request for anonymity. *See, e.g., CVS Caremark Corp.*, 2014 WL 12608588, at *3 (denying motion to proceed pseudonymously in an action alleging

discrimination under Title VII even though first factor weighed slightly in the plaintiff's favor because the balance of the other factors weighed against the plaintiff).

Plaintiff argues the first factor "weighs heavily" in her favor because this case "involves repeated sexual harassment, sexual assaults, coercive sexual conduct by a supervisor, threats tied to Plaintiff's livelihood, and resulting psychological and medical harm." ECF No. 8-1 at 3. Plaintiff has not, however, cited any cases holding that allegations such as those contained in the present Complaint support a finding that this action implicates a matter of sensitive and highly personal nature. Indeed, the only case Plaintiff points to on this precise issue is *Weston & Sampson*. The claims in *Weston & Sampson*, however, involved purported assault and battery claims against the plaintiff's co-worker and allegations that the co-worker raped the plaintiff by force. The present case does not include claims of assault and battery, nor does Plaintiff allege that she was raped.[4] Thus, *Weston & Sampson* is factually distinguishable from the present case.

---

[4] The Court's discussion herein about the difference between allegations of sexual harassment and/or assault versus rape are not intended to minimize the seriousness of sexual harassment and assault nor meant to diminish the harm and trauma caused by harassment and assault. There is no dispute that "[s]exual violence [in any form] is a profoundly negative and traumatic life event with widespread psychological and sociological effects on the victim" and disclosing the identity of a victim may risk subjecting him or her to ongoing psychological trauma." *U.S. Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, C/A No. 5:23-cv-00623, 2024 WL 349760, at *2 (S.D.W. Va. Jan. 30, 2024) (permitting a plaintiff to proceed under a pseudonym where she alleged, among other things, that her supervisor forced her to show him her breasts, groped and put his mouth on her breasts, put his hands in her pants to attempt to touch her genitals, and required her to perform oral sex on him). However, in analyzing the facts and circumstances of each case, as is required under the standard applicable to a motion to proceed pseudonymously, the Court must assess such distinctions. As discussed above, many courts have drawn a meaningful distinction between allegations of rape versus claims under Title VII involving harassment and assault in the workplace. *See, e.g., E.E.O.C. v. Spoa, LLC*, C/A No. CCB-13-cv-1615, 2013 WL 5634337, at *4 (D. Md. Oct. 15, 2013) ("[U]nlike other cases within the Fourth Circuit where the EEOC identified the victims of sexual harassment or assault, Doe and Smith are alleged victims of rape or attempted rape.").

It is true that "[n]umerous district courts have recognized a plaintiff's interest in preserving privacy where the allegations concern sexual assault." *Doe v. Doe*, 649 F. Supp. 3d 136, 139 (E.D.N.C.) (collecting cases) (denying motion to proceed under pseudonym because, even though the case involved claims of sexual assault, fairness dictated that the plaintiff's identity be revealed), *aff'd*, 85 F.4th 206 (4th Cir. 2023). And "[t]he Fourth Circuit has recognized particular sensitivity in cases where the allegations involve 'intimate details' of 'sexual assault' and the resultant trauma, and has noted that victims of such conduct have an 'interest in preserving privacy.'" *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 301 (D. Md. 2024) (quoting *Sidar*, 93 F.4th at 248); *but see Doe v. N. Carolina Cent. Univ.*, C/A No. 1:98-cv-01095, 1999 WL 1939248, at *2 (M.D.N.C. Apr. 15, 1999) ("[C]ourts have generally been reluctant to provide anonymity based on a plaintiff's potential embarrassment, even if the case involves sexual assault."). Nevertheless, while "Courts have found allegations involving sexual misconduct satisfy this [first *James*] factor," *J.E. v. Lyft, Inc.*, C/A No. 1:25-cv-02786-JRR, 2025 WL 3550596, at *1 (D. Md. Dec. 11, 2025), the allegations in the present case fall short of allegations in those cases to implicate "a matter of sensitive and highly personal nature." *Doe v. Emory & Henry Univ.*, 786 F. Supp. 3d 977, 982 (W.D. Va. 2025).[5]

The Court is sympathetic to Plaintiff's concerns, and understands that, unfortunately, victims of sexual harassment and assault often face scorn and further harassment when they file lawsuits or otherwise publicly disclose their allegations. While such concerns are certainly

---

[5] In *J.E. v. Lyft, Inc.*, for example, the plaintiff alleged that she was sexually assaulted by a Lyft driver who, after picking up the plaintiff for a Lyft ride, deviated from the assigned route, drove to a location unfamiliar to the plaintiff, climbed into the back set and forced sexual contact on the plaintiff.

reasonable, they alone are not sufficient to outweigh the public's right to access court proceedings.

As one court has noted:

> Notably, the Court deals with cases alleging sexual harassment and assault on a regular basis. In the vast majority of these cases, the plaintiffs file the lawsuit under their own names. Finding that these types of allegations are a valid reason to permit a plaintiff to proceed with a pseudonym would open up the Court to requests for anonymity each time a plaintiff makes allegations of sexual harassment or assault. Indeed, many courts faced with such requests have concluded that plaintiffs alleging sexual harassment or assault are not entitled to proceed anonymously.

*Doe v. Ct. of Common Pleas of Butler Cnty. PA*, C/A No. 17-cv-1304, 2017 WL 5069333, at *2 (W.D. Pa. Nov. 3, 2017) (collecting cases)

That a claim involves "matters of a sensitive and personal privacy matter" alone is not dispositive, as "courts have generally been reluctant to provide anonymity based on a plaintiff's fear of embarrassment over the revelation of personal matters," particularly where other factors weigh against anonymity. *Richard S. v. Sebelius*, C/A No. 3:12-cv-007-TMC, 2012 WL 1909344, at *2 (D.S.C. May 25, 2012). If the Court were to allow Plaintiff to use a pseudonym in this case, every plaintiff alleging Title VII discrimination and retaliation on the basis of sexual harassment or assault could proceed anonymously. Such a broad use of pseudonyms would be contrary to the well-established presumption in favor of public proceedings.

While the Court is sympathetic to Plaintiff's concerns, the fact that Plaintiff's allegations involve sexual assault does not mean that Plaintiff is necessarily entitled to proceed under a fictitious name. Plaintiff's primary concern appears to be a fear of embarrassment or shame if her identity is disclosed. The Court concludes that the privacy concerns at stake are valid and must be considered and weighed. However, Plaintiff's concerns of embarrassment do not weigh as heavily

as in some other circumstances involving more serious risk of social stigma or disclosure of more

intimate personal information.  *See, e.g., N. Carolina Cent. Univ.*, 1999 WL 1939248, at *3.

### *Risk of Retaliatory Harm*

The second factor requires the Court to consider whether identification of Plaintiff poses a

risk of retaliatory physical or mental harm.  Plaintiff contends the Complaint "plausibly alleged

ongoing retaliation and defamation by her former supervisor and employer" and that public

disclosure of Plaintiff's identity "would affirmatively facilitate further retaliation, blacklisting, and

reputational injury."  ECF No. 8-1 at 4.

The Court is mindful that accusations of sexual assault "can invite harassment and

ridicule."  *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D.

Va. 2016).  Plaintiff's argument, however, is insufficient to show that permitting her to proceed

anonymously will protect her from the risk of further retaliation.  And, courts have found that this

type of retaliation "is not the type of retaliatory harm an anonymous lawsuit is meant to prevent."

*Doe v. Liberty Univ.*, C/A No. 6:19-cv-00007, 2019 WL 2518148, at *3 (W.D. Va. June 18, 2019)

(finding second James factor not met when the plaintiff argued the injury litigated against was the

damage to plaintiff's reputation and who had concerns about harassment at work that would

jeopardize her employment); *see also Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240,

1245 (10th Cir. 1989) (explaining that anonymity "has not been permitted when only the plaintiff's

economic or professional concerns are involved" and collecting cases); *Doe v. Vail Resorts, Inc.*,

C/A No. 18-cv-00197-MEH, 2018 WL 11615589, at *3 (D. Colo. Apr. 10, 2018) ("Indeed, the

subject matter of many discrimination cases could harm the plaintiff's future employment

prospects.  Permitting all of these plaintiffs to proceed anonymously or sealing all of these cases

would reverse the presumption in favor of public proceedings.").  Moreover, the identified

individuals, including her former employer (Defendant) and Guerrier (the alleged perpetrator), are already aware (or likely would be aware) of the present litigation and of Plaintiff's allegations against Guerrier. Indeed, Plaintiff alleges Guerrier is already harassing her and retaliating against her. As such, Plaintiff has not demonstrated that requiring her to use her real name will result in additional retaliation or other risk of harm given Plaintiff's former employer (Defendant) and alleged perpetrator (Guerrier) already know of her identity and the present action. *Liberty Univ.*, 2019 WL 2518148, at *4 (noting that because the plaintiff acknowledged the named defendants were aware of her identity, "anonymity in this lawsuit would do little to prevent those in the workplace from learning that she is responsible for this action").

Finally, and significantly, the Court not requiring disclosure of personal or sensitive information. Any evidence or testimony of a highly sensitive and personal nature can still be protected from public disclosure, where appropriate, through such mechanisms as confidentiality orders, sealed exhibits, or screened testimony. See, e.g., *Doe v. Med. Univ. of S.C.*, C/A No. 2:22-cv-01702-BHH-MGB, 2022 WL 22872596, at *2 (D.S.C. Dec. 19, 2022) (discussing methods to prevent public release of private information under the applicable rules and noting "proceeding pseudonymously is not the only avenue by which Plaintiff can protect sensitive information").

### *Age of the Protected Party*

As to the third factor, requiring consideration of the age of the protected party, Plaintiff is an adult woman. Given her age, this factor weighs against permitting Plaintiff to proceed under a pseudonym or is neutral. *See, e.g.*, *Darden Restaurants*, 2024 WL 2881121, at *3 (D. Md. June 7, 2024) ("Because no minor is a party to this case and the allegations do not involve any minors, the Court finds that the third *James* factor weighs against anonymity."); *K.I. v. Tyagi*, No. 1:23-

17

cv-02383-JRR, 2024 WL 342899, at *2 (D. Md. Jan. 30, 2024) (finding that, where neither party

is a minor, "the third factor weighs against permitting Plaintiff to proceed under a pseudonym").

Plaintiff argues that she "is a single mother whose ability to support her child depends on

continued employment in her field" and that public identification could expose her child "to the

collateral consequences of reputational harm, financial instability, and psychological distress."

ECF No. 8-1 at 4–5.  However, the only allegation in the Complaint referencing Plaintiff's minor

child is that when Plaintiff worked at the prior deadlership, "Plaintiff was in a relationship with

the father of her child."  ECF No. 1-1 at 4, ¶ 10.  "While Plaintiff notes that she has a minor child

who lives in the home . . . , this is not, in this context, a sufficiently exceptional circumstance to

counsel in favor of anonymity."  *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 302 (D.

Md. 2024).  Plaintiff's reference to her minor child is insufficient to show that this factor weighs

in favor of granting the Motion.

### *Governmental or Private Party*

The fourth factor, requiring consideration of whether the action is against a governmental

or private party, also weighs against Plaintiff's use of a pseudonym, as no government entity is

involved in this case.  *See, e.g.*, *Doe v. Merten*, 219 F.R.D. 387, 394 (E.D. Va. 2004) ("[C]ourts in

general are less likely to grant a plaintiff permission to proceed anonymously when the plaintiff

sues a private individual than when the action is against a governmental entity seeking to have a

law or regulation declared invalid."); *Doe v. Pittsylvania Cnty.*, 844 F. Supp. 2d 724, 730 (W.D.

Va. 2012) ("Actions against the government do no harm to its reputation, whereas suits filed

against private parties may damage their good names and result in economic harm.").  "[C]ourts

typically find the fourth factor weighs against anonymity where a plaintiff is suing an individual

18

defendant . . ." *Doe v. Anne Arundel Cnty.*, No. 1:23-cv-03451-JRR, 2024 WL 2053719, at *3 (D. Md. May 8, 2024).

### *Fairness to the Opposing Party*

Finally, the fifth factor weighs against Plaintiff's use of a pseudonym. This factor considers whether Plaintiff's request to proceed pseudonymously is unfair to the opposing party. Defendant contends that because liability has not been established in this case, there is some risk that a jury may view the decision to let Plaintiff proceed anonymously to suggest that her claims are valid. ECF No. 10 at 6. The Fourth Circuit has recognized such a concern as potential unfairness weighing against anonymity. *Sidar*, 93 F.4th at 249; *see also Doe v. N. Carolina Cent. Univ.*, No. 1:98-cv-01095, 1999 WL 1939248, at *5 (M.D.N.C. Apr. 15, 1999) ("Defendants could be prejudiced before the jury if Plaintiff asserts claims for pain and suffering based on her embarrassment and shame, and the Court then reinforces those claims by allowing Plaintiff to proceed under a pseudonym."). Additionally, Defendant argues that allowing Plaintiff to proceed anonymously would be unfair given that "she has specifically identified her alleged harasser in her Complaint." ECF No. 10 at 6. Again, the Fourth Circuit has recognized this as a source of "potential unfairness when a plaintiff seeks to proceed anonymously while making allegations against a known defendant." *Sidar*, 93 F.4th at 249.

### CONCLUSION

Plaintiff's allegations are not to be taken lightly, and her desire to proceed anonymously is understandable and not to be trivialized. The Court recognizes the difficulty victims face in coming forward with their stories and seeking justice, and sympathizes with Plaintiff. However, the majority of the *James* factors weigh against granting Plaintiff's Motion. On the unique facts of this case and in consideration of the *James* factors, the Court finds that Plaintiff should not be

permitted to proceed in this action using a pseudonym.  Accordingly, Plaintiff's Motion (ECF

No. 8) is **DENIED**.  Within seven (7) days from the date that this Order is entered, Plaintiff must

file an Amended Complaint identifying herself by name as the Plaintiff in this case.

      **IT IS SO ORDERED**.

s/William S. Brown<br>
United States Magistrate Judge

February 20, 2026
Greenville, South Carolina